Chicago, Burlington and Quincy Railroad Company

*v.*

Stockton Bryan.

1. Assault and battery—*ejecting passenger from cars.* Where a passenger lawfully on a railway train conducts himself in an orderly and decent manner, and pays or offers to pay the fare fixed by the company, his expulsion from the cars by the conductor in a forcible manner is unjustifiable, and being so, the company will be held liable for an assault and battery in a civil action.

2. Master and servant—*liability of master for trespass of servant.* A railway company is liable for the acts of its conductor performed within the scope of his authority. If he wrongfully and forcibly ejects a passenger from a passenger coach while in the employment of the company, the latter will be liable in trespass to the passenger.

3. Railroad—*right to eject passenger from cars.* Where a passenger tenders a railway conductor a certain amount of fare to be carried to a certain station, which is less than the rate fixed by the company, saying he will pay no more, and the conductor retains a sum sufficient to take the passenger to an intermediate station and returns the balance, the passenger will have the right, on reaching such intermediate station, to pay the fare demanded from that point to the place of his destination, and upon his offering to pay the same he can not rightfully be put off the train.

4. Same—*rules and regulations.* A railway company has no power to adopt rules and regulations prohibiting decently behaved persons from traveling on its road, who will pay their fare and conform to all reasonable requirements for the safety and comfort of passengers.

5. Damages—*when exemplary may be given.* If a railway conductor, without demanding fare, or after the fare is offered to be paid, takes a passenger who is properly behaving himself by the collar, and leads him to the door of the

car and puts him off, tearing his coat in the act of expulsion, and such act is unprovoked, willful and malicious, and performed in a rude and aggravating manner, with the intention to wound the feelings of the passenger and to bring him into contempt and disgrace, in trespass against the company the jury may give punitive or exemplary damages.

6. INSTRUCTION—*without evidence and assuming facts, misleading.* In trespass against a railway company for the wrongful and forcible expulsion of a passenger from its train of cars, it is error to instruct the jury that in estimating damages they may take into consideration the position, character, standing, influence, power, wealth, ability to inflict injury and to practice tyranny, oppression and injustice, where there is no evidence touching such matters; and the court has no right to intimate that the company has evinced a disposition to practice tyranny, oppression and injustice. Such an instruction, too, is highly calculated to influence the passions of the jury, and prejudice them.

7. PRACTICE—*when defendant may open and close.* In an action of trespass to the person, where no general issue or traverse of the declaration is filed, but only pleas of confession and avoidance, the defendant has the right to open and close the case, both in the trial and in the argument to the jury, and it is error to refuse it.

8. BURDEN OF PROOF—*practice—where defendant assumes the burden but offers no proof.* In trespass, where pleas of confession and avoidance alone are filed, the plaintiff is required to introduce no evidence until the defendant, *prima facie,* sustains his defense. In such case, if the defendant introduces no evidence, the plaintiff may then give evidence of the nature and extent of the injury, precisely as in the case of a default.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. O. H. BROWNING, and Mr. WM. C. NORCROSS, for the appellant.

Messrs. STEWART & PHELPS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action for an assault and battery, by appellee against the railroad company, whilst appellee was a passenger on a train owned and run by appellant on its road at Sagetown. It is averred that the conductor in charge of the train committed the assault and battery.

To the declaration were filed two pleas of justification. They aver and the company claims, that under and by virtue of its charter it has the right to fix the rate of fare for carrying persons over its road, to regulate the time and manner in which goods, chattels and passengers are to be taken and carried over its road, and prescribe the manner in which its road shall be used; that at the time of the alleged assault and battery, appellee was a passenger on a train of appellant at Sagetown, and demanded of the company to be carried from thence to Kirkwood; that appellant demanded of appellee the usual and customary fare for such service, and was willing and offered to so carry appellee to that place on its train if he, appellee, would pay such fare, but he refused to pay the same, but demanded he should be so carried without paying that rate of fare; that upon such refusal the conductor refused to so carry him, and requested him to depart and go from the train, but he so to do wholly refused; that the conductor, by the authority of the company and for them, thereupon gently laid his hands upon appellee, in order to remove, and did then and there remove, him from and out the car, as he lawfully might for the causes aforesaid—which are the same supposed trespasses complained of in the declaration.

To each of these pleas a replication was filed, and issue joined to the country. The cause was tried by the court and a jury, and resulted in a verdict in favor of plaintiff, and the assessment of his damages at $500. A motion for a new trial was entered, but was overruled by the court, and judgment was rendered on the verdict, and defendant appeals.

It appears that appellee came to Burlington, Iowa, over a railroad in that State, where he testifies he paid three cents a mile fare on that road. On reaching that point, he remained upon appellant's train, and when the conductor came through the car to collect fare, appellee handed him sixty cents to pay his fare to Kirkwood, a distance of twenty or twenty-one miles, but the conductor declined to receive it as fare to that place, informing him that it was not sufficient in amount, but

took out of that sum an amount sufficient to pay the fare to Sagetown, an intermediate station, and returned the balance. When the train reached Sagetown, the conductor requested appellee to leave the train, but he refused, and the former, with force, removed him therefrom, but did him no injury beyond the indignity and tearing his coat.

Appellee testifies, that he offered to pay any fare that might be required from Sagetown to Kirkwood, and held money, in bills, in his hand, and offered it to the conductor, but he refused to receive it; that the conductor did not inform him of the amount of the fare, but persisted in removing him from the train; that after he was thus removed, the conductor placed a brakeman at the entrance, who said he was directed not to permit him to enter the train; that some person suggested to him to enter the depot and procure a ticket, and he applied for one, but the agent said there was not sufficient time, and to pay on the train; that he then went on the platform, found the train in motion, and got aboard of the car next in the rear of the one from which he had been ejected; that in getting on this car, the brakeman, to prevent him, struck from his hand a bundle, but some one picked it up and handed it to him, and he got aboard; that the conductor came immediately and collected fare, charging ten cents extra the usual fare because he did not procure a ticket. He was not in any way further molested, and was carried to and got off of the train at Kirkwood.

Appellee testifies, that when he first paid, the conductor informed him he must put him off at Sagetown, and in this he is corroborated by Harvey and Scott. He did not say, in the alternative, that he should pay what was usually demanded or be put off, and appellee says the conductor did not demand or inform him of the amount required. Harvey and Scott did not hear the conductor state the amount, although they heard the dispute. Berry fully corroborates appellee in his testimony that he offered to pay his fare, and heard him say to the conductor, "here it is," but was not in a position to

9—90 Ill.

see whether he offered it to the conductor. All three of these witnesses corroborate appellee in his statement that the conductor came to appellee as they approached Sagetown, and said to him, "you have to get off of this train," and neither of them heard him couple any condition with the declaration, or if they did they do not say so in testifying. He took hold of appellee's coat collar, and forcibly removed him from the train.

It is not claimed that appellee misbehaved in any manner, or did any other act to warrant his being forcibly ejected from the car, and the question is, whether he was rightfully removed. The conductor testifies, that he said to appellee he must pay fare or get off, and he neither said he would pay, offered or showed any money, or tendered fare. He flatly contradicts appellee in this, but corroborates him in saying he took appellee by the collar, led him to the car door, put him off, and sent a brakeman to prevent him from getting on the train. Now, this conflict was fairly for the jury to reconcile, or, being unable to do so, to give credit to the evidence which they believed to be true, and having believed appellee and his witnesses in preference to those for appellant, we perceive no ground for interfering with the finding. It is clearly sustained by the evidence.

If, as the jury have found in favor of the evidence of appellee and his witnesses, there was no pretense for a justification of the conduct of the conductor, appellee had gone on the train lawfully, and had a right to remain there until he did some act to forfeit this right. He was quiet, orderly, and behaved decently, so far as this record shows. Having done so, and having offered to pay his fare, as the jury have found, the action of the conductor was wholly unjustified in forcibly ejecting appellee from the car, and being unjustified, it amounted to an assault and battery. In this view of the case it is unnecessary to discuss the question as to the validity of the law fixing the rate of fare at three cents a mile, as the jury

have found that he offered to pay the larger sum claimed by the conductor.

But it is urged that the court erred in giving instructions for appellee.

It is insisted that the court erred in giving appellee's sixth instruction. By it the jury were told that if the conductor was in the employment of the company, or it continued him in its employment after this occurrence, with a knowledge thereof, the company would be, in either case, liable for these acts of such conductor. The first branch of the instruction asserts, that if the conductor was employed by the company when appellee was ejected, it would be responsible for his acts performed within the scope of his employment. There can be no objection to this proposition. The other branch of the instruction was, no doubt, intended to inform the jury, that although he was not at the time in the employment of the company, yet appellant, knowing appellee had been ejected, by retaining the conductor in its employment ratified the act and made it the act of the company. This we regard the meaning of the instruction, although not very clearly expressed. The latter clause of the instruction was entirely useless, as there was no denial that the conductor was employed at the time by the company, and he so testified. But we are unable to perceive that it did, or was in anywise calculated to prejudice appellant.

It is objected that the fourth of appellee's instructions is wrong. It is this:

"The court instructs the jury, that if they find the defendant guilty, and believe, from the evidence, that the assault and battery was unprovoked, was willful or malicious, and was perpetrated in a rude and insulting and aggravated manner, evincing an intent to wound and injure the plaintiff's feelings and bring him into contempt and disgrace in the estimation of the public, then the case is one justifying the imposition by the jury of *exemplary* or *vindictive* damages as a pun-

ishment for the offense; and the jury are instructed, that in estimating the proper amount of such damages, they may take into consideration the position, character, standing, influence and feelings of the plaintiff, and also the position, the influence, the power, wealth and duty of the defendant, and its ability and inclination, as evinced in this case, to practice tyranny, oppression and injustice, if such is the proof, and to fix the damages at such a sum as the proof in this case shows to be necessary to insure, not only the plaintiff, but all others, freedom from such tyranny, oppression and injustice, if such is found, not exceeding the $5000 claimed in the plaintiff's declaration."

It is insisted that there is no evidence warranting the finding of vindictive damages. We are not prepared to yield assent to this proposition. If the conductor, without demanding fare, and after appellee had offered to pay fare, took him by the collar and led him to the door of the car and put him off, it was for the jury to find whether the act was unprovoked, was willful or malicious, and was performed in a rude and aggravated manner, and was intended to wound appellee's feelings and to bring him into contempt and disgrace. If they found these thing to be true, they were warranted in giving punitive damages. We perceive no error in this branch of the instruction.

But we are unable to sanction what is asserted in the clauses that follow. There was no evidence touching the influence, power, wealth, ability to inflict injury, to practice tyranny, oppression and injustice. And more, the court invaded the province of the jury in saying the company had evinced a disposition to practice tyranny, oppression and injustice. If the evidence warranted such a conclusion, it was for the jury and not the court to find the fact. The instruction as given was unfair and unjust to appellant. It was highly calculated to inflame the passions of the jury against appellant, and if regarded by the jury as we must presume it was, it could only

prejudice appellant with the jury.   This portion of the instruc-
tion can not be sanctioned, and it was error to give it.

We perceive no objection to appellee's third instruction.
We understand it to assert a correct legal proposition, nor
does it assume any fact to have been proved.   As to whether
the conductor informed appellee of the amount of the fare, was
disputed, and it was for the consideration of the jury, and it
was for them to find whether appellee was able and offered to
pay his fare.

The second of appellee's instructions is criticised, but a
careful examination fails to detect any vice in its structure.
So far as we can perceive, it announces correct legal principles.
If erroneous, it is because it refers to the portion of the fourth
which we have condemned.   If that reference was stricken
out it would be correct.

It is claimed that the court erred in refusing to give appel-
lant's third instruction.   It is wrong, as it ignores all the
evidence in relation to appellee's offer to pay his fare at Sage-
town.   Even if the conductor had the power to remove him
from the train on a refusal to pay, still, if appellee behaved
himself decently, and paid or offered to pay his fare, he had the
right to require the company to carry him to Kirkwood.   If
it were conceded that before reaching Sagetown appellee had
said to the conductor that he would pay no more than sixty
cents, when the fare was seventy-five cents from Burlington to
Kirkwood, he did not thereby forfeit or preclude himself of
all right to travel on that road.   He had, notwithstanding
such refusal, a right to change his purpose, and again become
a passenger from Sagetown to Kirkwood, even on that trip,
by conforming to the rules of the company.   The company has
no power to adopt rules and regulations prohibiting decently
behaved persons who will pay their fare and conform to all
reasonable regulations for the safety and comfort of passengers,
from traveling on the road.   If the company could, for the
reason alleged, debar appellee from traveling on that trip, for

the same reason it might on the next or any subsequent trip. There was no error in refusing this instruction.

There being no general issue or any traverse of the declaration filed, but simply pleas of confession and avoidance, appellant, before the trial commenced, moved the court to allow it to have the affirmative of the trial and argument, but this the court refused and an exception was taken, and appellant assigns error thereon. As a general rule, in argument or other contests it devolves on the person holding the affirmative to establish his proposition. Until that is *prima facie* done, the person holding the negative is required to do no act in reference to the issue. Here, had appellant introduced no evidence, appellee would, under the issue, have been entitled to judgment. He was bound to introduce no evidence as to the commission of the act complained of, until appellant proved a *prima facie* justification of the act for which it was sued. Had appellant introduced no evidence, then appellee might have introduced evidence to show the nature and extent of the injury, precisely as in case of a default, for the purpose of enabling the jury to estimate the damages.

According to the doctrine of *Harvey* v. *Ellithorpe,* 26 Ill. 418, and *Kells* v. *Davis,* 57 id. 261, under these issues appellant was entitled to hold the affirmative of the trial and argument, and it should not have been deprived of the right.

For the errors indicated, the judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*