. HENRY S. CARPENTER ET AL.

v.

FIRST NATIONAL BANK.

1. JUDGMENT BY CONFESSION—AMENDMENT.—When a judgment is en-
te ·ed by confession by virtue of a warrant of attorney, and the defendants
against whom it is rendered make application to the court, and upon their
own motion have such judgment opened for the purpose of letting in a de-
fense, then the time of final judgment in the suit, according to the true in-
tent and meaning of the Practice Act as regards amendments in civil suits,
is the time at which, after the defendants have been let in to plead, the final
judgment or adjudication of the trial court upon the controversy between
the parties is made.

2. SAME.—When the appellants were allowed to come in and defend
against the judgment by confession in vacation, this opened up the plead-
ings and proceedings to such an extent that the court could properly permit
an amendment in the declaration for the purpose of correcting a mere cler-
ical error, the word "July" being used instead of "June," and thereby
obviate a variance between the declaration and the note in suit.

3. BURDEN OF PROOF—RIGHT TO OPEN AND CLOSE CASE.—The party
against whom judgment would be given, in case no proof was offered on
either side, has the burden of proof and the right to open and close the
case. Tested by the pleadings, the burden of proof in this case was upon
plaintiff.

APPEAL from the Circuit Court of Will county; the Hon.
GEORGE W. STIPP, Judge, presiding.    Opinion filed June 14,
1886.

Messrs. GARNSEY & KNOX, for appellants; that the judg-
ment entered by the clerk in vacation was void, cited Roundy
v. Hunt, 24 Ill. 598; Chase v. Dana, 44 Ill. 262; Tucker v.
Gill, 61 Ill. 236.

The plaintiff should not have been allowed the opening
and close of the case.  The affirmative was on defendants
all the way through the trial.  The plea and stipulation
amounted to no more than special pleas, and even when the
issue is allowed to stand, if it be merely formal the defendant
may open and close, and it is considered a right: 1 Greenleaf's
Ev., Sec. 75; Homan v. Thompson, 6 Car. & P. 717 (21 E. C.

L. 645); Smart v. Rayner, Ibid. p. 721, (21 E. C. L. 656); Mills v. Oddy, Ibid. p. 728 (21 E. C. L. 659).

Mr. E. C. HAGAR and Mr. A. O. MARSHALL, for appellee; cited R. S., Ch. 110, § 23; Keith v. Kellogg, 97 Ill. 147; Frear v. Com Nat. Bk. 73 Ill. 473; Hull v. Hamilton, 74 Ill. 437.

As to opening and close: 1 Greenleaf on Ev., 75; Huddle v. Martin, 54 Ill. 258; Kells v. Davis, 57 Ill. 261; Kent v. Mason, 79 Ill. 540; Colwell v. Brower, 75 Ill. 516; Harvey v. Ellithorpe, 26 Ill. 418; Topper v. Snow, 20 Ill. 434; C. B. & Q. R. R. Co. v. Bryan, 90 Ill. 126; Amos v. Hughes, 1 M. & Rob. 494; McReynolds v. B. & O. River Ry. Co., 106 Ill. 152; Williams v. Shup, 12 Bradwell, 454; South Park Com'rs v. Trustees, 107 Ill. 489.

BAKER, J. In the early part of 1884 Frederick W. Woodruff and A. L. Jones purchased some sixty thousand bushels of Kansas corn and had it stored in special bins, to their order, in the Joliet elevator at Joliet, Illinois. A part of this corn was disposed of during the spring, and on the 19th of June they shipped to Chicago five car loads of it, which arrived there at an early hour on the morning of the 20th. This left some forty-one thousand three hundred and seventy-three bushels still on hand, of which about seven thousand bushels were recognized as being in a bad condition and had been separated from the rest; and there was a question as to the real condition of the residue, and as to whether or not it would pass inspection at Chicago as No. 2 corn. The whole of this corn yet on hand, that which was damaged as well as that which was supposed to be good, was either on the 19th or on the 20th of June, sold to H. S. Carpenter & Company, grain dealers at Joliet and appellants herein, at fifty-four cents a bushel. Fifteen thousand dollars of the price agreed to be paid for the corn has been paid, and the present controversy grows out of an attempt to enforce the collection of a promissory note for $7,341.82 given for the residue of the purchase money. The note was made payable to the First National Bank of Joliet, appellee, but it is admitted that it is not the

property of the bank, but that Woodruff & Jones are the real owners of it.

On the 11th of July, 1884, the note, a warrant of attorney, affidavit, declaration and cognovit were filed in the office of the clerk of the Circuit Court of Will county, and the judgment thereon by confession entered in vacation for $7,377.34 against appellants and in favor of appellee. The declaration filed described a note dated the 19th day of *July*, 1884, instead of a note bearing date the 19th of *June*, 1884.

On the 24th of July an order was made by the circuit judge, in vacation, staying the execution that had been issued on the judgment; and at the September term of the court, on the motion of appellants, the judgment was opened and they were let in to plead, and an order was made that the judgment should stand as security. The general issue was filed, and with it a stipulation that any evidence might be given under it which could have been given under any special pleas; and by leave of the court the declaration was amended by striking out the word "July" in the description of the note, and substituting therefor the word "June."

After the case was called for trial at the January term, 1885, the appellants moved the court to enter an order allowing to them the opening and close of the cause, the appellants, for the purposes of the motion and the trial of the cause if granted, admitting the execution and delivery of the promissory note attached to the declaration; but the motion was overruled and an exception taken.

Upon the trial the contention of appellants was, that the purchase of the corn was made on the 20th of June, and was conditional that the five car loads that had been shipped to Chicago, and which was similar corn to the great bulk of that included in the purchase, had passed inspection at Chicago as No. 2 corn; and that to induce the closing of the contract, Woodruff fraudulently represented to them that said five car loads had passed such inspection as No. 2 corn, and displayed to them a telegram of that date, fraudulently sent by his partner, Jones, from Chicago, which read: "Corn inspected; all right." They further claimed that the corn was

purchased for the Philadelphia market and was intended to fill contracts they had with Gill & Fisher, limited, of Philadelphia, for "sail" corn, and with other Philadelphia firms, and that the vendors knew this; and that it was also known to the vendors that they intended to make a mixture of No. 2 Chicago corn with dry rejected Illinois corn, two thirds of the first to one third of the latter, and thereby produce a quality of corn which would pass inspection at Philadelphia as "sail" corn, and which could be turned in on their contracts; that the corn sent to Chicago was inspected there as "rejected corn, soft and souring;" and that the corn purchased by appellants, or most of it, was immediately, and before they had notice of the actual result of the Chicago inspection, mixed with Illinois corn and shipped to Philadelphia, and arrived there in bad condition, did not pass inspection as "sail" corn, and was sold and disposed of there at a considerable loss. It was claimed by appellants that this loss was sufficient to pay the whole amount of the principal and interest of the note, and they sought to set off this damage against it.

The contention on the part of appellee was, that the contract was closed on the 19th of June; that Woodruff & Jones simply sold the grain on its merits, and after full inspection by appellants; that they did not warrant either its quality or condition, and that the telegram of the 20th of June had nothing to do with the making of the contract; and further, that they had no notice it was intended for the Philadelphia market, or to fill contracts there.

The verdict was: "We, the jury, find the issue joined in favor of the plaintiff, and assess its damages on the 11th day of July, 1884, at $5,841.80." Motions for a new trial and in arrest of judgment were interposed by appellants and overruled. Judgment was then rendered upon the judgment in vacation by confession, on the 11th day of July, 1884, for the amount of the verdict, $5,841.80, with legal interest on said sum from July 11, 1884, and costs; and the clerk was ordered to indorse the amount of the verdict upon all executions issued upon the judgment, as the only sum which, with interest and costs, should be collected.

Carpenter v. First National Bank.

The Practice Act provides that at any time before final judgment in a civil suit, amendments may be allowed in any matter, either of form or substance, in any process, pleading or proceeding, which may enable the plaintiff to sustain the action for the claim for which it was intended to be brought, or the defendant to make a legal defense. When a judgment is entered by confession, by virtue of a warrant of attorney, and the defendants against whom it is rendered make application to the court, and upon their own motion have su h judgment opened for the purpose of letting in a defense, then the time of final judgment in the suit, according to the true intent and meaning of this statute, is the time at which, after the defendants have been let in to plead, the final judgment or adjudication of the trial court upon the controversy between the parties is made. When, then, the appellants were allowed to come in and defend against the judgment by confession in vacation, this opened up the pleadings and proceedings to such an extent that the court could properly permit an amendment to the declaration, for the purpose of correcting a mere clerical error, and thereby obviate a variance between it and the note in suit. That the use of the word "July" instead of the word "June" in the declaration was a mere mistake of the variance, was apparent not only from the note itself, and the letter of attorney, which were on file in the case, but from the fact that an impossible date was stated in the declaration, as it would be preposterous to suppose that a judgment could be entered on the 11th day of July, 1884, upon a promissory note not executed until the 19th of July, 1884. Courts of law exercise an equitable jurisdiction over judgments entered by confession upon notes accompanied by warrants of attorney, and it is necessary, to satisfy the demands of justice, that they should possess it, and exercise it liberally in all proper cases. Hall v. Jones, 32 Ill. 38.

The fact the amendment was made, obviates the point urged that the judgment entered in vacation was void, for the reason the power of attorney only authorized the confession of a judgment on a note dated the 19th of *June*, 1884, whereas the declaration counted only upon a note dated *July*

19, 1884, and the cognovit confessed a judgment upon the promise and undertaking mentioned in the declaration, the attorney thereby exercising a power and authority that had not been conferred upon him; and for the further reason, such being the state of the record, the clerk had no power upon the papers filed, to enter up the judgment. There might be some force in this objection, had the amendment not been made. As the record stands, we think the cases of Roundy v. Hunt, 24 Ill. 598, Chase v. Dana, 44 Id. 262, and Tucker v. Gill, 61 Id. 236, have no application. In Roundy v. Hunt, the motion was to vacate and set aside the judgment, and not, as in this case, merely to open the judgment and allow the defendants to file pleas; and moreover, no amendment had been made during the defect in the record. In Chase v. Dana and Tucker v. Gill, the defects in the records, which rendered the judgments void, had never been purged therefrom by amendments made in the trial courts. In the case before us, the alleged error was eliminated from the record in the *nisi prius* court, while the record was still before the court, and after the judgment and proceedings had been opened up at the instance of appellants themselves.

Objection is made to the action of the court in refusing to permit appellants to open and close the case upon the trial.

The rule, as held in this State is, that the party against whom judgment would be given in case no proof was offered on either side has the burden of proof, and has the right to open and close the case. C. B. & Q. R. R. Co. v. Bryan, 90 Ill. 126; McReynolds v. B. & O. Ry. Co., 106 Id. 152; South Park Com'rs v. Trustees, 107 Id. 489.

Tested by the pleadings, the burden of proof was undoubtedly upon appellee, the plaintiff below. The only plea was the general issue, with a stipulation that special matter might be given in evidence under it and under the pleadings. If the note had not been given in evidence, or other evidence offered by either party, the judgment would have been against the plaintiff. Was the burden shifted by the proceedings had after the case was called for trial? It will be noted that appellants did not file a written admission of the execution and

delivery of the note sued on, or otherwise stipulate upon the record, or even offer to stipulate, that they did or would make such admission of execution and delivery even for the purposes of the pending trial, but merely made a qualified and conditional offer that they would make such an admission if their motion was granted. But their motion was not allowed, and so no admission of the execution and delivery was made, or even affirmatively appeared upon the record. If appellants really desired the opening and closing of the case, and for the purpose of obtaining it were willing to admit a *prima facie* case in the plaintiff, they should have filed such pleadings as would have led to that result, or at the very least have made an unqualified and unconditional admission that would be patent upon the record and shift the burden of proof upon themselves ; they might then have been in condition to insist as matter of right they were entitled to open and close at the trial. But, instead of this, they made a conditional offer, which was not accepted, and tried, as it were, to drive a bargain with the court. We think there was no error in overruling their motion in that behalf.

Although the verdict in the case in form found the issues joined in favor of the plaintiff, yet it is apparent from the record that upon the mainly controverted issue the finding of the jury was for the defendants, who are appellants here. The amount of principal and interest due upon the note on July 11, 1884, the date of the judgment by confession, was $7,377.24, and that judgment was for that amount. The verdict of the jury was special, and assessed the damages to be $5,841.80 on the 11th day of July, 1884. It is manifest the jury made a deduction from the amount which otherwise would have been due upon the note at that date of $1,535.44, and under the evidence this could only have been done upon the ground that appellants had established, by the receipt of the evidence, that the Kansas corn had been purchased by them on the 20th of June, and on the false representation to them by Woodruff & Jones that the five cars of Kansas corn shipped to Chicago had passed inspection there and been graded as No. 2 corn, and that in consequence

thereof appellants were entitled to damages to the amount of $1,535.44, and to have the same set off against or allowed by way of recoupment on the amount that otherwise would have been due upon the note. There is no pretense otherwise afforded by the evidence for making the deduction. The verdict of the jury was evidently based on this theory : that the sale was predicated upon the false and fraudulent statement of the vendors that the five car loads of the corn sent to Chicago had passed inspection as No. 2 corn; but that either Jones & Woodruff had no notice the corn purchased was to fill existing contracts in Philadelphia, or that there was in the evidence no competent and legal proofs of damages to be based on Philadelphia re-sales. The jury must further have considered the Kansas corn in the elevator to be virtually and substantially Chicago corn, and for the reason the freight on it to Chicago was already paid by virtue of the terms of the contract under which it had been transported from Kansas; and that therefore the basis of damages under the evidence before them was the difference between the price for which the corn was sold to appellants, fifty-four cents a bushel, and the average for which the five cars sold in Chicago, i. e. four cars at fifty cents a bushel, and one car at fifty-two cents a bushel. A calculation upon this basis produces substantially the verdict that was returned. We think that the evidence conclusively establishes the fact that the note, although dated June 19th, was actually written and signed on the 20th of June ; and that the view that was evidently taken by the jury of the whole case, to judge from their verdict, was fully justified by the evidence which was before them.

The verdict of the jury having been for appellants on the issue whether the purchase was induced by the telegram and representations as claimed, it becomes wholly unnecessary to consider many of the objections made by them to the rulings of the court upon the admissibility of testimony, and for the reason the proposed testimony bore only upon that issue, and it having been found in their favor they were not damnified by such rulings.

Carpenter v. First National Bank.

The court refused to admit the testimony of either of the appellants with reference to the amounts they had received for the corn shipped to Philadelphia, as it was based solely on the reports made to them by the several parties to whom it had been consigned, and who, after it had arrived in bad condition and failed to grade, upon inspection, as "sail" corn, refused to receive it upon their contracts, and under arrangements made with appellants, disposed of it as best they could upon the market for account of consignors. This was but hearsay testimony, and it was properly excluded from the jury.

We regard but a single one of the instructions given at the instance of appellee as objectionable ; that was the 9th, and as it referred only to the issue that the jury decided in favor of appellants, it is plain they were not injured by it.

Exception is taken to the action of the court in refusing one of the instructions requested by the appellants. We think the ruling of the court thereon was proper. It was with reference to the measure of damages ; and under it, if the jury found the defendants were entitled to recover any damages, even if it was upon the theory upon which the verdict was afterward found, then they were directed, and without any reference to whether Woodruff & Jones had any notice of the Philadelphia re-sales or not, or even knew the corn was intended for the Philadelphia market, to compute the damages upon the basis of such re-sales, and of any extra expenses paid on account of the grain being in bad condition. The instruction was probably improper on other grounds, which it is deemed unnecessary now to consider.

We find no error in the record which should reverse, and it is therefore affirmed.

Affirmed.