John Vieceli, Appellant, v. Walter J. Cummings and Daniel C. Green, Receivers, etc., et al., Trading as Chicago Surface Lines, Appellees.

Gen. No. 42,746.

Heard in the third division of this court for the first district at the October term, 1943. Opinion filed April 26, 1944.

GEORGE L. REILLY and FRANK E. AUSTER, both of Chicago, for appellant.

FRANK L. KRIETE, W. F. McLAUGHLIN and ARTHUR J. DONOVAN, all of Chicago, for appellees; WILLIAM J. FLAHERTY, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

In a complaint filed in the superior court of Cook county by John Vieceli against the receivers of the corporations doing business as Chicago Surface Lines, plaintiff asked damages for personal injuries suffered because of negligence in the operation of a bus and also because of the wiful, wanton and malicious conduct in the operation of the bus. Issue was joined and the

cause tried before the court and a jury. Motions were made by defendant at the close of plaintiff's case and at the close of all the evidence to find the defendants not guilty. These motions were denied. Plaintiff's counsel tendered instructions to the court, but the court refused to give them to the jury. The court, over the objection of counsel for plaintiff, refused to allow arguments, or to give instructions to the jury, and a verdict of not guilty was returned by the jury without any instructions given to them by the court or argument by respective counsel. A motion for a new trial was denied and judgment entered on the verdict against plaintiff for costs, to reverse which this appeal is prosecuted.

In assailing the judgment plaintiff states that the right of a party litigant to address the jury by his counsel is absolute, and that it is the duty of the court to give instructions stating the law applicable to the evidence on the issues raised. To sustain the judgment, defendants maintain that the verdict was the only verdict warranted by the evidence, and that the court should have directed such verdict when requested at the close of all the evidence. The law is well settled that argument of counsel is a matter of right. Argument of a case is as much a part of the trial as the hearing of the evidence. A party to a civil suit has a right to be heard, either by himself or by counsel, not only in the testimony, but in the argument of his case. No matter how weak or inconclusive the case may be, if it is enough to present a disputed question of fact, the counsel of the party has a right to present his client's case to the jury. *Carpenter v. First Nat. Bank,* 19 Ill. App. 549; *Thompson v. People of State of Illinois,* 144 Ill. 378; *Lanan v. Hibbard, Spencer, Bartlett & Co.,* 63 Ill. App. 54. The office of instructions is to give information to the jury concerning the law of the case for application to the subject matter before them. It is a well-settled rule of law that each side in any

litigation is entitled to have the jury instructed relative to the theory of the law upon which the case is tried. Each side has a right to have the court give instructions stating the law applicable to the facts presented by such party, so that if the jury finds the facts in accordance with such evidence, they may correctly apply the law thereto. *Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207; *Bentkowski v. Bryan*, 299 Ill. App. 217; *Sampsell v. Rybcynski*, 229 Ill. 75. By a motion to direct a verdict at the close of plaintiff's case, the sole question presented to the court is whether, admitting the evidence in favor of the plaintiff to be true, that evidence, together with all legitimate conclusions and inferences, fairly tends to sustain plaintiff's cause of action. If, at the close of plaintiff's case, the court was convinced that plaintiff had failed to sustain his cause of action, in accordance with the familiar rule here repeated, it was his duty to direct a verdict for the defendants. The court denied defendants' motion to direct a verdict at the close of plaintiff's case. By introducing evidence after a motion to direct a verdict at the close of plaintiff's case had been overruled, defendants waived the right to assign error on that ruling. By a motion to direct a verdict at the close of all the evidence, the same question is presented and the same test applied as on a motion to direct a verdict at the close of plaintiff's evidence, but the plaintiff has the added right of the benefit of all favorable inferences, deductions and conclusions that may be drawn in his favor, not only from the testimony in his own case, but also in the testimony produced by the defendants. At the close of all the testimony the court denied defendants' motion for a directed verdict. By a motion for judgment notwithstanding the verdict, the same question is again presented and the same test applied as in deciding a motion for a directed verdict at the close of all the evidence. In deciding these three motions, the court had no right to pass upon the credi-

bility of the witnesses, to consider any purported impeachments, the weight thereof, or the weight of the testimony, since the motions admit the evidence in favor of plaintiff to be true, together with all legitimate conclusions and inferences. If the court were convinced, at the close of all the evidence, that the plaintiff, under these tests, had failed to present evidence to sustain his cause of action, it was the duty of the court to direct a verdict for the defendants. The court submitted the case to the jury, but refused to instruct the jury as to the law applicable to the case, and refused to permit counsel to argue the case to the jury.

Defendants do not oppose the argument of plaintiff that where a case is submitted to a jury the respective parties have the right to argue the case before the jury, and that the parties have the right to have the jury instructed as to the law applicable to the case. They assert that the verdict returned by the jury is the verdict which they requested the court to direct; that the judgment entered is the judgment sought by them; and that having eventually obtained the judgment which they sought, they have no cause to appeal either directly or by cross-appeal. On this appeal defendants are entitled to urge every ground presented by the record which supports the judgment in their favor. In *People v. Bradford,* 372 Ill. 63, our Supreme Court said (65, 66):

"The judgment appealed from was for appellees, and no part of it was adverse to them. They were, therefore, in no position to prosecute a cross-appeal. Having obtained all the relief they deemed themselves entitled to, they may sustain the judgment upon any ground warranted by the record, though they may wish to show the court below erred in not giving it to them on different or additional grounds."

See also *McNulty v. Hotel Sherman Co.,* 280 Ill. App. 325, 331; *Hillmer v. Chicago Bank of Commerce,* 375

Ill. 266, 272. In *Lanan v. Hibbard, Spencer, Bartlett & Co.,* 63 Ill. App. 54, in reversing the judgment and remanding the cause because appellant's counsel was not permitted to argue the case to the jury, the court said:

"We regret that we are unable to say that the evidence in this case was so clear that the court might properly have instructed the jury to find for the plaintiff the amount recovered by him, in which case appellant would have had no right to address the jury."

Defendants analyze the evidence in furtherance of their argument and state that, admitting the evidence in favor of plaintiff to be true, together with all legitimate inferences, such evidence does not sustain plaintiff's cause of action, and that it was the duty of the court to direct a verdict. We have read the transcript of the testimony in order to determine whether under the rules we have announced, plaintiff made out a case which should have been submitted to the jury. In doing so, we consider the point urged by defendants as though the court had directed a verdict for the defendants.

The collision out of which this case arose, occurred at Belmont and Pacific avenues, Chicago, on Wednesday, August 6, 1941 at about 7:00 p. m. Belmont avenue runs in an easterly and westerly direction and Pacific avenue in a northerly and southerly direction. Belmont avenue is 53 feet 6 inches wide from curb to curb, and Pacific avenue is 33 feet 5 inches wide from curb to curb. Defendants controlled and operated buses on Belmont avenue as far west as Pacific avenue. The power for the buses came from overhead trolley wires. The trolley wires for westbound buses were strung in an easterly and westerly direction 12 feet south of the north curb, and the wires for the eastbound buses were strung in an easterly and westerly direction about 13 feet north of the south curb. A drawing in evidence portrays the scene of the accident. Buses moving in a westerly direction make a wide

circle to the left from Pacific avenue in a space south
of Belmont avenue and west of Pacific avenue in order
to turn around and proceed in an easterly direction in
Belmont avenue. This movement and space may be
described as a turn-around. The trolley wires for
westbound buses start turning toward the southwest
42 feet east of the east curb of Pacific avenue, and
continue on that slant up to the west curb line on Pa-
cific avenue, where they make a complete arc with a 35-
foot radius. The trolley wires start making the turn
about 12 feet south of the north curb of Belmont av-
enue and 42 feet east of the east curb of Pacific avenue,
and when these wires are opposite the west curb of
Pacific avenue they are 22 feet south of the north curb
of Belmont avenue.

Plaintiff testified that he was driving his 1936 Ply-
mouth automobile west on Belmont avenue; that he got
onto Belmont avenue from Orange street, which is one
block east of Pacific avenue; that the weather was
clear and dry; that he saw the bus down the street;
that it was about 300 feet west of him; that the bus
was going west in the north lane of Belmont avenue
about three feet from the curb; that he was driving
about 20 or 25 miles an hour; that when he reached
Pacific avenue the bus made a sharp turn and struck
the rear fender of his automobile; that he became un-
conscious and lost control of his automobile; that he
regained consciousness in the West Suburban hospital;
that he felt pain all over his head, side, shoulder, back
and leg; that a bandage was put on his head; that he
had bruises all over his shoulder, head and legs; that
there were 12 stitches in his head; that it took three
weeks before he was able to walk around; that his head
still pains him; that at the time of the accident he was
employed and was earning $39.75, plus a bonus each
week; that he went back to work after three weeks;
that before the occurrence he was running a machine
at work; that after the accident he got a lighter job

for seven months; that then he went back to his regular position; that immediately before the accident his automobile was in "No. 1a condition"; that at the time of the occurrence he lived three and one half blocks from Pacific and Belmont avenues; that he had driven on Belmont avenue quite often before the accident; that he had no intoxicants to drink before the accident; that he had also ridden on the bus; that a few feet west of Pacific avenue the trolley wires cross the street and make a circle off of the side of Belmont avenue; that on the day of the occurrence he had seen those buses make that turn a couple of times; that he knew the buses turned there on Belmont avenue; and that he knew the buses were in the habit of making that turn.

Richard Boerstal, called by plaintiff, testified that he was in a store on the northeast corner of Pacific and Belmont avenues; that the bus came to the corner going west on Belmont avenue, traveling 10 miles an hour; that it continued going, making a left hand turn; that he saw the automobile traveling west on Belmont avenue; that the automobile was going approximately 25 to 30 miles an hour, but it started to slow down after he first saw it about 50 feet east of the intersection; that the bus was traveling west until it started to make a left hand turn going south; that before the bus made this turn it was traveling in the north lane of Belmont avenue next to the curb; that the rear end of the automobile collided with the side of the bus; that the automobile tried to avoid the bus before the collision took place; that the front side of the bus came in contact with the right rear of the automobile; that the bus did not stop until it came in contact with the automobile; that there were no passengers on the bus at the time of the accident; that there is a 35 mile an hour speed limit; that the automobile was knocked into a tree on the south side of Belmont avenue about 50 or 75 feet west of Pacific avenue; that the driver of the

automobile was bleeding about the head and seemed to be in a dazed condition; that after the bus passed the store in which witness was standing the automobile came along; that the bus ran 40 or 50 feet past the store when the witness saw the automobile; that the bus "runs on a trolley"; that it cannot run unless it has "a wheel on the trolley"; that he "was caused" to observe the automobile coming out at that particular moment because he believed he sensed something was going to happen; that he thought something would happen because before it came to the corner the automobile slowed up a little but kept on going; that he believed the automobile was going about 25 to 30 miles an hour; that it started to slow down when the driver saw the bus moving; that he did not believe anyone could judge the speed of an automobile coming toward or passing him with any degree of accuracy, and that when he said 25 or 30 miles an hour, that is what he would guess; that he felt something was going to happen because the bus did not stop, kept on going; that he knew the bus was going to make a turn there; that he was familiar with the neighborhood and knew the trolleys go around there; that the automobile and bus collided about the middle of Belmont avenue; that at that time the bus was west of the store in which witness was standing; that he couldn't exactly see through the bus, but that he could see which part of the bus came in contact with the automobile by looking at the markings on the bus after the accident; that he saw the marks on the left side of the bus towards the front center; that the front tire of the bus was flat; that the bus stopped at the time of the collision; that the automobile ran into a tree which may have been about 50 or 190 feet from the bus, and that the bark of the tree was knocked off. Mrs. Anthony Hoy, called by plaintiff, testified that she was sitting in her automobile which was parked on the northwest corner of Belmont and Pacific avenues, facing south; that she was wait-

ing for her children to come from a Belmont avenue feeder bus; that the automobile was traveling west on Belmont avenue in the westbound lane towards the center of Belmont avenue; that the bus was traveling in the right hand lane westbound, next to the north curb of Belmont avenue; that the automobile was traveling approximately 25 miles an hour and the bus was traveling 10 to 15 miles an hour; that there were no passengers on the bus; that the bus made a left turn at or about the intersection; that the bus did not come to a stop before it made the turn; that the automobile went 50 or 60 feet before it came to a stop; that the driver of the automobile was dazed, with blood on his face and forehead; that before the accident the driver of the bus did nothing prior to making a turn; that she heard no horn blown by the driver of the bus; that the bus stopped immediately after the crash; that the automobile careened down the street 50 or 60 feet and came to a stop after it hit a tree, and that the collision took place a half block away across Pacific avenue. Cecelia Steck, called by plaintiff, testified that she was walking through a prairie and had reached the north sidewalk of Belmont avenue, just west of Pacific avenue; that she saw the bus going west; that when it approached Pacific avenue it made a left turn without making any stop; that the automobile was traveling 25 miles an hour, and that a statement exhibited to her which was introduced in evidence bore her signature. In this statement she said: "I was walking across prairie and had reached the north sidewalk of Belmont avenue just west of Pacific. I saw this auto coming fast, heard screeching brakes—the westbound bus had started to make turn to left to go back east. I heard screeching of auto brakes—then shortly after the bump—the auto hit the left rear side of the bus, tore off the fender of the bus—then auto scraped along left side of bus—blew out the left front tire of bus— auto ran on came to a stop in about 190 feet at the

southwest corner (or near there) of Page & Belmont. Man driver only one in auto. Had a bad cut on his forehead. Bus was in center of street. Auto could have passed to right side of bus but driver of auto cut over into eastbound lane.'' Carl S. Petersen, called by defendants, testified that he arrived at the scene shortly after the occurrence; that he saw a bus standing in the middle of Pacific and Belmont avenues on a southwest angle and that the distance between the place where the bus was standing and the tree that was struck by the automobile was approximately 125 feet to the best of his guess. Martin Michael, called by defendants, testified that he was driving his automobile west on Belmont avenue; that there was a trolley bus stopped and discharging passengers at Pacific and Belmont avenues; that the bus made a left turn to go into the lot to head east; that at the time the bus first started to make this left turn to go into the lot there was no automobile between the witness and the bus; that the witness was about 100 feet behind the bus when the automobile passed on the left side of the street going at a good rate of speed and hit the side of the bus; that witness was traveling about 25 miles an hour and in his opinion the automobile that passed him was traveling about 45 to 50 miles an hour; that at the time the automobile passed the witness, the bus was about the center of the street and the witness was about 100 feet behind the bus; that the front of the automobile collided with the center of the bus, glanced over and blew out the front tire of the bus and continued on Belmont avenue for about 150 feet and collided with a tree; that the bus came to a stop after the accident on the left hand side of Belmont avenue with its front over the middle of the street and its rear about 15 feet from the right hand curb. John Moczynski, called by defendants, testified that he was on the northeast corner of the intersection; that the bus slackened down almost to a stop and started to creep

along about three to five miles an hour to the center of the street to make the turn; that he first saw the automobile about one half block back of the bus, at which time the bus was making the center of the street, creeping for the turn; that the automobile was going 45 to 50 miles an hour and collided with the center of the bus on the south side of the bus and that he hit the front end, swerved out and kept going for 190 feet down the street, skidding with skid marks and hit a tree head on; that the next morning witness took a rule and measured the distance from the place of the collision to the tree and that it was 190 feet; and that the automobile tore the bark off the tree. Oscar Ludman, called by defendants, testified that he was an engineer employed by defendants and that he prepared the drawing of the scene of the occurrence. Another witness called by defendants testified that Charles J. Svoboda, the driver of the bus, was then a seaman in the United States Navy overseas. Oscar W. Hoos, called by defendants, testified that he was the driver of a mail truck; that he was eating dinner in his home about 250 feet from the intersection; that he heard a loud crash and went over to the scene of the accident; that he saw a bus partly turned around just west of the corner of Belmont and Pacific avenues; that he saw marks on the bus where it was hit; that the marks were at the rear wheel and on the side of the bus; that the front tires were down and there were skid marks on the pavement which ran along the side of the bus and headed toward the tree; that witness stepped off the distance between the bus and the tree and it was 150 feet and 30 feet beyond the curb, a total of 180 feet. Robert L. Manville, an engineer employed by defendants, testified that in his opinion an automobile traveling at 20 miles an hour on a dry concrete pavement in good condition and equipped with four wheel brakes in good condition and working order, could be stopped in just under 20 feet. At 25 miles

an hour it could be stopped in less than 30 feet. At 50 miles an hour it would be stopped in about 115 feet. Arthur C. Hansen, called by defendants, testified that he was a repairman employed by defendants; that he investigated the bus the morning following the accident and found that at the rear end on the left hand side the rubber fender lock was torn loose; that toward the center the side of the body was scraped and the paint rubbed off; that on the left front wheel the rubber fender was also torn and the body was pushed in and scratched about the length of two windows, or four or five feet. George Duncan, a 15-year-old school boy called by defendants, testified that he was sitting on the northeast corner of the intersection; that he saw the trolley bus coming west pretty slow, just barely going; that the witness could walk faster than it was going; that it started to make the corner; that the automobile started to come pretty fast; that he couldn't say how fast and it struck the bus; that as to where it struck the bus, the witness said that he thought there was a piece of rubber missing off the back of the wheel and it hit the front of the bus; that he could not see the car hit the front of the bus, it was on the left side, but he heard the crash; that the automobile was knocked off balance, swerved and made a lot of dust; that the left side of the automobile hit the tree and bounced back; that witness did not see anyone get off the bus, which crawled along pretty slow but did not stop; and that it slowed up real slow and started to make the corner.

Pacific avenue is at the end of the Belmont avenue bus line. At that place westbound buses proceed around a loop and turn back to the east. The buses get their power from the trolley wires overhead. They cannot operate unless the trolley wheel is on this trolley wire. The trolley wire was over the street in plain view, and it turned around a loop there. If the bus moved at all it could go nowhere else except

around this loop. Plaintiff lived only three and one half blocks from this loop, had ridden on Belmont avenue quite often and had ridden on the bus. He knew that just a few feet west of Pacific avenue the trolley wires cross the street and make a circle off of the side of Belmont avenue. He knew that on the day in question and had seen buses make that turn. Plaintiff knew that the bus was in motion, that it would necessarily turn left at the loop and that it would go nowhere else. Notwithstanding this, he undertook to drive past the moving bus at an admitted speed of 20 to 25 miles an hour, not on the right or north side, but on the left side, which was the side toward which the bus would necessarily turn. He saw the bus from the time it was 300 feet ahead of him. Consequently, he had an abundance of time to regulate his driving so as not to collide with the bus while it was making the turn which he knew it would make at that place. It was a clear dry day and plaintiff's automobile was in A-1 condition. At 20 to 25 miles an hour he could have stopped in 20 to 30 feet. The bus had traveled across Pacific avenue, angling to the south, before it reached the beginning of the sharp curve. Pacific avenue is 33 feet wide from curb to curb. If the bus was moving 10 miles an hour and the automobile was traveling 20 to 25 miles an hour, the automobile must have traveled at least 66 to 82 feet after the bus passed the Pacific avenue curb line, and after the plaintiff must have known, if he was paying any attention to the situation, that it was proceeding into Pacific avenue for no other purpose than to make the turn. From the east building line of Pacific avenue to the place where the sharp curve begins is more than 55 feet. While the bus was traveling that distance, the automobile traveled from 110 to 137 feet. Since the bus stopped immediately after the collision, it stands to reason that the momentum which caused the automobile, skidding on the pavement, to run 190 feet and

then hit a tree with sufficient force to tear off two feet or more of bark and to wreck the front end of the automobile, was furnished by the speed with which the automobile was being driven past the bus which plaintiff knew would necessarily turn left at that place. We are satisfied that the evidence, viewed in the most favorable light in support of plaintiff's action, does not prove that plaintiff was in the exercise of due care for his own safety. As has frequently been held, the law will not tolerate the absurdity of permitting one to testify that he looked and did not see the danger when the view was unobstructed, and where, if he had properly exercised his sight, he would have seen it. *Dee v. City of Peru*, 343 Ill. 36; *Greenwald v. Baltimore & O. R. Co.*, 332 Ill. 627.

There is much force in the argument of defendants that there is no evidence to warrant a verdict finding the defendants guilty of negligence, which was the proximate cause of the injuries. However, in view of our finding that under the principles of law discussed it was the duty of the court to direct a verdict for the defendants on plaintiff's failure to prove his allegation that he was in the exercise of due care and caution for his own safety, it is unnecessary for us to decide whether there was any evidence to sustain the charge of negligence. It will be observed that there was also a charge of wilful and wanton conduct. No attempt was made to prove this charge, and no instructions were requested by plaintiff dealing with that charge. On the contrary, plaintiff's requested instructions were based upon the exercise of due care, and although they were not given to the jury, they may be considered in determining whether the plaintiff intended to submit the wilful and wanton charge to the jury. It is well established that an appellant is bound on appeal by the theory upon which he tried the case in the trial court. We find that the charge of wilful and wanton conduct was abandoned by the plaintiff.

Our view is that it was the duty of the court at the close of all the evidence to direct a verdict for the defendants. Therefore, the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

HEBEL, P. J., and KILEY, J., concur.