GULF, COLORADO AND SANTA FE RAILWAY COMPANY v. J. M. RINEY.

Decided January 20, 1906.

**Expired Excursion Ticket—Ejection of Passenger.**

Where the purchaser of a round–trip ticket from S. to G. attempted to return on the same from G. to S. after the return portion of said ticket had expired by limitation, the conductor of the train had the right to eject such passenger at V., an intermediate station, upon the refusal of said passenger to pay the regular fare for the entire distance from G. to S., and this, although said passenger after being ejected at V., reboarded the train at V. and offered to pay fare from V. to S. The good faith of such passenger in believing he had a right to ride on said ticket from G. to S. was immaterial.

Appeal from the District Court of Cooke County. Tried below before Hon. D. E. Barrett.

*J. W. Terry* and *A. H. Culwell,* for appellant.—A passenger who has been expelled at a station for refusing to pay fare can not continue his passage by paying fare from that point only, but must pay the whole distance. Galveston, H. & S. A. Ry. Co. v. Turner, 23 S. W. Rep., 83; Hutchinson on Carriers, secs. 589, 575, 576, 580a.

*R. E. Thomason* and *Robt. E. Cofer,* for appellee.—Appellee under the circumstances of this case had the same right as any other citizen to take passage on appellant's train at Valley View, and to ride to Sanger on payment or tender of payment of fare from Valley View to Sanger, it appearing that he had done no act, which would forfeit his right to become a passenger at Valley View. Ward v. N. Y. C., etc., Ry. Co., 56 Hun, 268; Louisville & N. Ry. Co. v. Breckenridge (Ky.), 34 S. W. Rep., 702; Chicago, B. & Q. Ry. Co. v. Bryan, 90 Ill., 126; Hutchinson on Carriers, p. 697, note 2.

CONNER, CHIEF JUSTICE.—This suit was instituted by appellee to recover damages in the sum of $1,000 for an alleged wrongful ejection from one of appellant's passenger trains. The trial was before the court without a jury and resulted in a judgment in appellee's favor for $25. There is no statement of facts and the case is presented to us on this appeal from said judgment upon the pleadings and the court's conclusions of fact and law alone. But a single question is presented by the assignments of error, and that is whether upon the facts found appellee was rightfully ejected from the train.

As appellee *alleged,* he entered and became a passenger on one of appellant's regular passenger trains at Valley View, for transportation some eight miles south to Sanger; that when appellant's agent and conductor in charge of said train approached and demanded the fare as such passenger, appellee offered and tendered the full amount of the regular cash fare, which was refused, and thereupon appellee was wrongfully ejected.

The issues as presented by appellant's pleading were to the effect that appellee had entered the train in question at Gainesville, some ten miles north of Valley View, for the purpose of going to Sanger;

that before the train arrived at Valley View said conductor demanded the fare of appellee which was refused, and that appellee, having refused to present a valid ticket or pay the cash fare, was ejected from the train at Valley View; that if appellee ever tendered fare in any amount, it was only the fare from Valley View to Sanger, and not from Gainesville to Sanger.

The court's findings, omitting formal parts, are as follows:

"1. I find that the defendant, the Gulf, Colorado & Santa Fe Railway Company, owns and operates a line of railway extending south from the town of Gainesville, in Cooke County, Texas, to Galveston, Texas; that extending south from Gainesville said railway line passes through the town of Valley View, which is ten miles south of Gainesville, and passes through the town of Sanger at a point eight miles south of Valley View, making the distance from Gainesville, Texas, to said town of Sanger eighteen miles.

"2. I find that on July 4, 1903, that plaintiff, J. M. Riney, purchased of defendant's agent at Sanger, Texas, a round trip passenger ticket from said Sanger to Gainesville and return good for ten days and providing for continuous passage. The use of said ticket was limited to ten days from the date stamped on the back thereof, which was July 4, 1903, and was not good unless used within ten days from its date.

"3. I find that on June 5, 1904, the plaintiff being in the town of Gainesville, having in his possession said ticket—that part of the same from Sanger to Gainesville being already cancelled by punch marks—boarded defendant's southbound train at Gainesville for Sanger, Texas, and that when said train pulled out from Gainesville and was between said Gainesville and said Valley View defendant's conductor, while collecting tickets and fares on said train, called upon the plaintiff for his ticket, whereupon the plaintiff presented to said conductor the return portion of said ticket as fare from Gainesville to said Sanger; that said conductor inspected said ticket, and finding that the same had expired by its limitation nearly twelve months before, declined to accept the same, and informed said plaintiff that said ticket was void and that he could not accept it; and thereupon returned said ticket to said plaintiff and requested him to pay his said fare from said Gainesville to said Sanger; that plaintiff then and there insisted that said ticket was good from Gainesville to Sanger, and refused to pay his fare as requested by said conductor. That upon plaintiff's refusal to pay said fare said conductor informed him that he must either pay his said fare or leave said train at Valley View which was the first station on defendant's railroad reached after leaving Gainesville.

"4. I find that when said train reached Valley View that plaintiff was ejected from said train by the conductor thereof, which act on the part of said conductor I find was lawful inasmuch as I find that said ticket, when presented to said conductor by plaintiff, had expired and become void by its terms, and that plaintiff could not lawfully ride thereon.

"5. I find that said train stopped at Valley View only a few minutes, and that when it pulled out south on its way to Sanger, that plaintiff again boarded the same, and that defendant's conductor demanded

of plaintiff his fare from said Gainesville to said Sanger; that thereupon plaintiff tendered to said conductor fifty cents and requested the conductor to take from it his fare from Valley View to said Sanger and give him back the change; that said conductor informed plaintiff that he must either pay his fare for that part of the route already traveled on said train from Gainesville to Valley View, as well as the fare from Valley View to Sanger, or he would eject him from said train.

"That plaintiff proposed and offered to pay his fare from Valley View to Sanger, but refused to pay for the route already traveled from Gainesville to Valley View. Plaintiff still refusing to pay his said fare from said Gainesville to Sanger, the defendant's conductor stopped said train about one and a half miles south of Valley View and requested the plaintiff to leave said train, which plaintiff then and there did.

"This was about eight o'clock on the evening of June 5, 1904.

"6. I find that when the plaintiff boarded defendant's train at Gainesville for Sanger upon said expired portion of his ticket from Gainesville to Sanger, that he did so in good faith believing that he had a right to ride upon said return portion of said ticket to Sanger, Texas.

"7. I find that by reason of plaintiff's ejection, which occurred after said train left Valley View that plaintiff suffered damages in the sum of $25.

"8. I find that the train upon which plaintiff took passage at Gainesville for Sanger, Texas, was a through passenger train, and that when plaintiff reached said Valley View and left said train that he again boarded the same train from which he had been ejected at Valley View and rode thereon until he was again ejected about a mile and a half south of Valley View.

"*Conclusions of Law.* Under the above facts found by me, I find that plaintiff could not lawfully ride, and was not entitled to be carried upon said train, from Gainesville to Sanger, Texas, upon said ticket, which had expired and become void by its limitation and that when said train reached Valley View that defendant's conductor lawfully ejected plaintiff from said train.

"2. I find that after plaintiff was ejected from said train at Valley View he again re-entered the same with the bona fide intention of becoming a passenger thereon, and with the intention of paying his fare in money from said Valley View to said Sanger, and that said conductor had no right to eject him from said train after the same left Valley View because plaintiff failed and refused to pay his fare over the route previously traveled on said train from Gainesville to Valley View."

We think the court erred in its judgment. Appellee cited in its support the following cases: Ward v. N. Y. C., etc., Ry. Co. (N. Y.), 56 Hun, 268; Louisville & N. Ry. Co. v. Breckenridge (Ky.), 34 S. W. Rep., 702; Chicago, B. & Q. Ry. Co. v. Bryan, 90 Ill., 126, and note 2, p. 697, of Hutchinson on Carriers; and insists, as presented in his most forcible proposition, that "inasmuch as appellee was the holder

of a ticket from Gainesville to Sanger, which he had paid for, and inasmuch as he had boarded the train at Gainesville in good faith, believing he had a right to ride on said ticket, and inasmuch as he immediately and peaceably left the train at Valley View, the very first stop after the conductor had refused his ticket and had told him to leave the train, appellee had the same right to take passage from Valley View as any other citizen. The railroad company could no more exclude appellee from this train under these circumstances, than it could exclude him from any subsequent train on the same day or any following day." Another one of appellee's propositions is that, "while an intruder, who boards a train without any right, knowing he has no rights and having paid no fare nor purchased any ticket, may be ejected and can not take passage on the same train from the point of ejection, yet this rule has no application to a passenger in the position of appellee, holding a ticket, purchased by him and which he bona fide thinks entitles him to passage."

It is thus apparent that appellee's contention, as also the judgment, rests upon the asserted facts that he was a purchaser and holder of a ticket which he in good faith believed entitled him to transportation from Gainesville to Sanger, and that hence he was not an intruder in his entrance of the train at Gainesville. It is to be observed, however, that appellee makes no such case by his pleading. The case he presents is one of an entry in good faith as a passenger at Valley View, with a tender of the proper fare, etc. He nowhere alleges any fact, any contract, any declaration, custom or other matter that tends to show either that the ticket he had was good or that he even thought so when he entered the train at Gainesville, or when he presented it to the conductor between Gainesville and Valley View. Nor is any such state of case presented by appellant's defensive pleadings. So that we fail to see how appellee can be permitted to base a right of recovery upon the propositions he asserts. But if mistaken in this view, and if the facts necessary to support these propositions were admissible in rebuttal of any evidence appellant could offer under its pleadings, and if appellee's good faith in any event is material, we nevertheless conclude that the court's findings as a whole indisputably establish that appellee entered appellant's train at Gainesville with the purpose of securing one continuous passage to Sanger, and that he then knew or ought to have known that his ticket did not entitle him thereto. The court finds, and it is undisputed, that appellee entered the train at Gainesville rather than at Vallew View for the purpose of a continuous passage to Sanger, and that his ticket on its face was a special limited ticket that had expired by its terms nearly a year before. It is possible that he did not actually know that these facts affected its validity, although he has not ventured to so assert, but if so, it amounted only to mere ignorance for which the law makes no excuse. The law required him to know the contents and legal effect of the ticket or contract upon which so much reliance is now placed. Pennington v. Philadelphia, etc., Ry. Co., 62 Md. Rep., 95; Missouri, K. & T. Ry. Co. of Texas v. Murphy, 35 S. W. Rep., 67; Houston & T. C. Ry. Co. v. Ford, 53 Texas, 371; Gulf, C. & S. F. Ry. Co. v. Henry, 84 Texas, 678; Demilley v.

Texas & N. O. Ry. Co., 91 Texas, 215.  Appellee, therefore, was not in the condition of one entering the train at Gainesville in good faith as a passenger.  His status was rather that of an intruder, one entering the train with the purpose of asserting a right to ride on a ticket that he knew to be invalid, and the authorities above cited from our own court not only establish the invalidity of appellee's ticket and support the propositions to which they are cited, but also establish the right of the conductor to eject appellee upon his refusal to pay the fare from Gainesville to Sanger when demanded.

We do no think that appellee's ejection from the train at Valley View and immediate re-entrance amounted to an independent undertaking to go from the latter station to Sanger.  This at most, we think, constituted but an interruption of the continuous passage appellee had undertaken at Gainesville, and that therefore upon appellee's re-entrance and continued refusal to present a good ticket or pay the regular fare from Gainesville to Sanger, the conductor of the train was authorized to again eject him.  The cases cited by appellee we think easily distinguishable from the one before us.  We will not undertake to review them minutely, as their full force may be at once seen by an examination, but we think it may be said in general terms that insofar as applicable at all they are cases where the passenger ejected had ridden the distance for which he refused to pay either upon a ticket that was actually valid or that he had actually paid the fare.  We have found no case presenting the circumstances of this one in which it was held that the passenger could recover for the ejection, but very many that support our conclusion to the contrary.  The Maryland case hereinbefore cited seems very closely in point.  In that case the passenger had purchased a special ticket entitling him to ride in one continuous passage from Perryman's to Baltimore and return.  He proceeded to Perryman's on December 13, and at Perryman's entered the car to return to Baltimore on the 16th day of December, the day after the return coupon had expired by its terms.  On his journey back to Baltimore he was required to leave the cars at Back River station, having declined to pay his fare from Perryman's to Baltimore after being informed by the conductor that his ticket was not good.  After he had left the cars at Back River station and while on the platform, he offered to pay the conductor his fare from that station to Baltimore, but the conductor refused to give him admission to the cars on these terms.  It appeared in that case that the passenger offered to prove that before he purchased the ticket he was informed by the agent upon inquiry from him that it was "good until used."  The court held, however, that the passenger's right was dependent alone upon the contract which was evidenced by the ticket, no authority in the agent to make the quoted statement being shown; that while there was evidence that he did not read the ticket, he had ample opportunity to do so, and inasmuch as by its terms it had expired the conductor was authorized not only to eject him, but also to refuse to permit the further continuance of his journey without payment of fare for the entire distance from Perryman's to Baltimore.  In the case of Manning v. the Railway Co. by the Alabama Supreme Court, reported in 16 Law Rep. Ann., 55, a passenger interrupted a return journey on a special ticket by stopping over at a

station for one day, after which he boarded another train of the railroad at midnight and proceeded unmolested until he passed the station of Montgomery and was nearing Calera, less than forty miles from Birmingham, the end of his return journey. Whereupon the conductor in charge of the train discovered that the passenger was traveling on a forfeited ticket but possibly had not learned that he had so traveled before reaching Montgomery. As a condition of his proceeding further the conductor exacted of him that he should pay fare from Montgomery to Birmingham, or failing that he would be put off the train at the next station, which would be Calera. Reaching Calera the passenger procured from the ticket agent at that place a ticket to Birmingham, and upon that ticket sought to continue his journey on the same train. This the conductor refused to allow him to do, stating that under the road's regulations, he could not permit him to proceed unless he would also pay the back fare from Montgomery. The passenger refused to do this and he was ejected from the train, and the court held that such ejection was authorized and that the passenger could not recover damages therefor. See, also, Hall v. Memphis & C. R. Co., 15 Fed. Rep., 57; O'Brien v. Railway Co., 80 N. Y., 236; Davis v. Railway Co., 53 Mo., 317; Swan v. Railway Co., 132 Mass., 116; Atchison, T. & S. F. Ry. Co. v. Gants, 38 Kan., 628; Johnson v. Concord Ry., 46 N. H., 213; O'Brien v. Boston & W. Ry. Co., 15 Gray (Mass.), 20.

Our conclusion, as already indicated, is that appellee could not, under the circumstances shown, secure a completion of the continuous journey undertaken by him from Gainesville to Sanger by payment of the fare from Valley View only. He could not thus enforce his special ticket or contract for a reduced rate in direct opposition to its terms or thus compel a service of appellant that neither law nor reason required.

The judgment will be reversed and here rendered for appellant.

*Reversed and rendered.*