SANDEN, APPELLANT, *v.* NORTHERN PACIFIC RY. CO.,
RESPONDENT.

(No. 2,961.)

(Submitted April 4, 1911.   Decided April 22, 1911.)

[115 Pac. 408.]

*Railroads—Carrier and Passenger—Contract of Carriage—Construction.*

Carrier and Passenger—Contract of Carriage—Rule of Construction.
    1.   The rule that one who accepts a contract and avails himself of its
provisions is bound by the stipulations and conditions contained in it
applies to contracts of carriage, provided the conditions are reasonable
and not prohibited by law.

Same—Special Contracts—Contents—Presumptions.
    2.   One who purchases a railroad ticket at full fare is not required to
read the printed matter thereon to ascertain whether there are in it
unusual stipulations, and is, therefore, not presumed to have accepted
conditions other than those imposed by law; where, however, he buys a
ticket at a reduced rate, and the circumstances are such as to notify
him of that fact, he is affected with notice of any unusual terms and
conditions attached to its use and bound thereby, whether he reads them
or not or is incapable of reading them.

Same—Special Contract of Carriage—Breach by Passenger—Ejection—
When not Unlawful.
    3.   Plaintiff bought a second-class limited railroad ticket from St. Paul
to Seattle. It provided that it was subject to exchange at any point on
the route for a continuous passage ticket or check. A train auditor
took up the ticket and delivered in its stead an exchange or identifi-
cation check which contained a provision that stop-over privileges
were allowable on the check, on application to the conductor, if it
bore a thirty-day limit. Various conductors informed plaintiff that
she could stop over at Butte for a day, as did also defendant's agent
at the latter place. The next day, upon resumption of her journey,
she was ejected from the train by the conductor, who refused to re-
ceive the check and demanded payment of fare. *Held,* that the check
did not constitute a substitute contract for that contained in the
ticket; that plaintiff was bound by the conditions printed thereon;
that neither the conductors nor the agent had authority to waive the
stipulation with reference to stop-over privileges, and that her ejec-
tion from the train under the circumstances was not unlawful.
(Rev. Codes, sec. 5350.)

*Appeal from District Court, Silver Bow County; John B. Mc-
Clernan, Judge.*

ACTION by Mina Sanden against the Northern Pacific Railway
Company. From a judgment for defendant, and an order deny-
ing her a new trial, plaintiff appeals. Affirmed.

43 Mont.—14

*Mr. James M. Hinkle,* and *Mr. Chas. A. Wallace,* submitted a brief in behalf of Appellant; oral argument by both.

Respondent says its conductors in charge of said train had no authority to bind it with reference to appellant's right to stop over on said ticket. The law says that the principal is bound by the acts of the agent within the general scope of the employment, and especially is this true with railway companies. In 2 White on Personal Injuries on Railroads, section 735, the author says: "A passenger is entitled by virtue of his contract of transportation to protection against the negligence of the carrier's employees. The conduct of the carrier's employees, while transacting the business of the railroad company, and when acting within the general scope of their employment, is of necessity to be imputed to the company which constitutes them its agents for the performance of its contracts with passengers. It is immaterial that the company did not authorize or even know of the act of the employee causing the injury to the passenger, or even if it disapproved or forbade it, the carrier is equally liable if the act is done in the course of the employment. This rule is based on grounds of public policy and convenience."

Respondent says the ticket shows that it is a "second-class limited," because "second-class limited" is canceled or punched out. But the rule in contracts is that which is not canceled is what is in force, unless reference is made to the canceled parts. There is no reference made to "second-class limited" in this ticket. The traveling public are not required to know the internal rules of a railway company. (*Railroad Co.* v. *Winters,* 143 U. S. 60, 12 Sup. Ct. 356, 36 L. Ed. 71; *Hufford* v. *Railroad Co.,* 64 Mich. 631, 8 Am. St. Rep. 859, 31 N. W. 544; *Railway Co.* v. *Graves,* 110 Tenn. 232, 100 Am. St. Rep. 803, 75 S. W. 729; 6 Cyc. 555.) · *Sloane* v. *Railroad Co.,* 111 Cal. 668, 44 Pac. 320, 32 L. R. A. 193, covers the questions in this case very fully in its various phases. The case of *Railroad Co.* v. *Winters, supra,* takes up the various questions which are involved in the

case at bar.   (See, also, *Northern Pacific R. R. Co.* v. *Pauson*,·
70 Fed. 585, 17 C. C. A. 287, 30 L. R. A. 730; *O'Rourke* v. *Rail-
way Co.*, 103 Tenn. 124, 76 Am. St. Rep. 639, 52 S. W. 872, 46
L. R. A. 614.)    A railroad ticket should be construed most
favorably for the passenger and against the carrier if there is
any uncertainty or doubt in its terms.    (1 Peters on Carriers of
Passengers, sec. 276.)

The case of *Tarbell* v. *Northern Central Ry. Co.*, 31 N. Y. Sup.
Ct., 24 Hun, 51, which was a continuous passage ticket, is de-
cisive of the case at bar.    The syllabus in that case is as follows:
"Where a passenger, upon applying for information to a train
agent or conductor, is informed by him that he may get off at
a station and continue his journey by the next train upon the
same ticket, and the passenger, relying upon the said statement,
leaves the train at that station, the company is bound to carry
him on the next train to the end of his route upon that ticket,
and is estopped from denying the authority of the conductor to
make the second agreement."    The *Tarbell Case* has been cited
with approval in later opinions of the courts, and we have been
unable to find any cases wherein it has been cited with disap-
proval.    (2 White's Personal Injuries on Railroads, sec. 735;
*New Jersey Co.* v. *Brockett*, 121 U. S. 637, 7 Sup. Ct. 1039, 30
L. Ed. 1049; *Railroad Co.* v. *Quigley*, 62 U. S. 210, 16 L. Ed. 73.)

Railway tickets are prepared by the carrier; they contain more
or less of printed and other directions; some passengers cannot
read, others are children, none of them have time or opportunity
in the rush of travel to scrutinize the ticket; and if they did,
many could not understand the devices and punch-marks used
by the company.    They do not understand the significance of
the punch-marks.    Those things are to advise the conductors
and agents of the internal rules of the company; but the courts
have said, relating to that subject: "The traveling public are
not required to understand those significations."    (See *Railway
Co.* v. *Graves*, 110 Tenn. 232, 100 Am. St. Rep. 803, 75 S. W.
729, and cases cited.)

In behalf of Respondent, *Mr. Wm. Wallace, Jr., Mr. John G. Brown,* and *Mr. R. F. Gaines,* submitted a brief. *Mr. Brown* argued the cause orally.

The court did not err in excluding the evidence as to plaintiff's not reading the ticket, and as to the short time it was in her possession, and the other testimony going to excuse the plaintiff from the conditions of the ticket by reason of her not having read, or had an opportunity to read, its terms and provisions. It is admitted that the ticket purchased and giving her the right to be carried was a signed agreement. We insist that this was the only contract between the parties. There is no pleading of fraud practiced or imposition made in the signing of the ticket, duress, or other circumstance that would relieve the plaintiff from the contract. On the contrary, the evidence shows that she accepted the contract and traveled on it without protest. Plaintiff was bound by the conditions expressed in it. (*Boylan* v. *Railway,* 132 U. S. 146, 10 Sup. Ct. 50, 33 L. Ed. 290; *Daniels* v. *Railway,* 62 S. C. 1, 39 S. E. 762; *Fonseca* v. *Steamship Co.,* 153 Mass. 553, 25 Am. St. Rep. 660, 27 N. E. 665, 12 L. R. A. 340; *Gulf etc. Ry. Co.* v. *Riney,* 41 Tex. Civ. App. 398, 92 S. W. 54; *Southern etc. Ry. Co.* v. *White,* 108 Ga. 201, 33 S. E. 952; *Freeman* v. *Railway,* 71 Kan. 327, 80 Pac. 592, 6 Ann. Cas. 118; *Heffron* v. *City Railway,* 92 Mich. 406, 31 Am. St. Rep. 601, 52 N. W. 802, 16 L. R. A. 345; *Boling* v. *Railway,* 189 Mo. 219, 88 S. W. 35; *England* v. *Railway,* 32 Tex. Civ. App. 86, 73 S. W. 24; *Coyle* v. *Railway,* 112 Ga. 121, 37 S. E. 163; *Hanlan* v. *Railway,* 109 Iowa, 136, 80 N. W. 223.) And this is true even though the party holding the ticket could not read or write. (*Watson* v. *Railway,* 104 Tenn. 194, 56 S. W. 1024, 49 L. R. A. 454.) Especially is it true in cases of railway tickets where the purchaser does not pay full fare, and that fact in itself is notice to him that some of the ordinary rights of travel and passage are, as to him, limited. (*Watson* v. *Railway,* 104 Tenn. 194, 56 S. W. 1024, 49 L. R. A. 454; *Elliott* v. *Railway,* 145 Cal. 441, 79 Pac. 420, 68 L. R. A. 393; *Boling* v. *Railway, supra.*) There is a presumption in the law that the ordi-

nary ticket only entitles the holder to a continuous passage, unless the contrary clearly appears. (*Wyman* v. *Railway*, 34 Minn. 210, 25 N. W. 349; *L. & N. Ry. Co.* v. *Klyman*, 108 Tenn. 304, 91 Am. St. Rep. 755, 67 S. W. 472, 56 L. R. A. 769; *Hatten* v. *Railway*, 39 Ohio St. 375; *Walker* v. *Railway*, 16 Am. & Eng. R. R. Cas. 386; *Churchill* v. *Railway*, 67 Ill. 390; Elliott on Railroads, sec. 1585; 6 Cyc. 583, note 77.) And this presumption is clearly founded upon reason. As is said by the editor of the L. R. A. series, there is remarkable uniformity in the decisions upon this question, all seeming to agree that there is no right to stop on the ordinary ticket, in the absence of a special agreement or regulation of the railway permitting it (28 L. R. A. 773).

The conductor's check was not a ticket; it was simply an evidence of the fact that plaintiff had purchased a ticket and was entitled to ride. (See *State* v. *Overton*, 24 N. J. L. 435, 61 Am. Dec. 671.)

So, too, in coupon tickets, it has been held that the original ticket or signed contract between the parties is what was to be looked to, and not an exchange check, which did not give privileges the ticket itself did. (*Palmer* v. *Railway*, 3 S. C. 580, 16 Am. Rep. 750.) So, too, where the original ticket was sold to one person and was nontransferable, and the exchange check did not so specify, and was sold to another, the second man had no right to ride. (*Walker* v. *Railway*, 15 Mo. App. 333.)

Upon the point whether or not a conductor or agent of the company can vary an original signed agreement of the parties, the following cases are squarely in point: *Mosher* v. *Railway*, 127 U. S. 390, 8 Sup. Ct. 1324, 32 L. Ed. 249; *McGhee* v. *Reynolds*, 117 Ala. 413, 23 South. 69; *International Ry. Co.* v. *Best*, 93 Tex. 344, 55 S. W. 315; *Petrie* v. *Railway*, 42 N. J. L. 449; *Railway Co.* v. *Henry*, 83 Tex. 678, 19 S. W. 870, 16 L. R. A. 318; *Coyle* v. *Railway*, 112 Ga. 121, 37 S. E. 163; *England* v. *Railway*, 32 Tex. Civ. App. 86, 73 S. W. 24; *Hanlan* v. *Railway*, 109 Iowa, 136, 80 N. W. 223; *Ellis* v. *Railway*, 30 Tex. Civ. App. 172, 70 S. W. 114; *Texas etc. Ry.* v. *Smith*, 38 Tex. Civ. App. 4, 84 S. W. 852; *Ketcheson* v. *Railway*, 19 Tex. Civ. App. 288,

46 S. W. 907; *Lake Shore etc.* v. *Pierce,* 47 Mich. 277, 11 N. W. 157; *O. & M. Ry.* v. *Hatton,* 60 Ind. 12; *Elliot* v. *Railway,* 145 Cal. 441, 79 Pac. 420, 68 L. R. A. 393.

The conductor's punch-marks being of such common usage and so universally recognized and known, and the plaintiff knowing the limitations of her original contract, we would urge that it was her own negligence in not advising herself what the punch-marks on the "second-class limited" meant, that caused her confusion and resulting trouble. (*Aplington* v. *Pullman Co.,* 97 N. Y. Supp. 329, 110 App. Div. 250.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The purpose of this action is to recover damages alleged to have been sustained by plaintiff by being wrongfully ejected from one of defendant's trains by the conductor in charge thereof.

On October 7, 1907, Frank Sanden purchased at the ticket office of defendant at St. Paul, Minnesota, transportation for himself and plaintiff, his wife, represented by two tickets, from that point to the city of Seattle, Washington, by way of Butte, Montana. The tickets were in the form of contracts, both signed by the husband. It is not controverted that in signing plaintiff's ticket her husband acted as her agent, and that she was bound by the stipulations contained therein in so far as she should be bound by them. The body of the ticket is the following:

"Good for One Continuous Second-Class Passage.

"St. Paul (U. D.) Minn., to Seattle, Wash.

"Subject to the following contract:

"1st. This ticket is not good for passage if it shows any alterations or erasures.

"2d. In accepting this ticket, which is not transferable, having been sold at a reduced rate, the holder whose signature is attached hereto, expressly agrees to use the same for a continuous trip to destination before midnight of date canceled by punch mark in margin; otherwise the holder further expressly agrees to forfeit this ticket and pay full fare to destination.

"3d. The purchaser agrees that the value of his [or her] baggage does not exceed $100.

"4th. This ticket is subject to exchange, either whole or in part, at any point on the route for a continuous passage ticket or check.

"A. M. CLELAND, General Passenger Agent.

"[Signed]   FRANK SANDEN, Purchaser.

"[Signed]   ................., Witness."

The punch-marks on the margin allowed up to and including October 12 within which to complete the journey. The two immediately entered a regular through train of defendant, bound to their destination. A short distance from St. Paul the train auditor took up both tickets and delivered in their stead exchange or identification checks, of which the following is a copy:

| "30 Day Limited | 1st Class Limited | 2d Class Limited | Half |
| --- | --- | --- | --- |

"Northern Pacific Railway Co.

"Conductor's Exchange Check.   Non-Transferable,
and subject to forfeiture if presented by any person other than the original holder,

"To Point Cancelled in Margin.

"This check entitles the holder, whose appearance must correspond with description indicated by punch marks in left-hand margin, to one passage of class, and to the destination cancelled hereon. The date cancelled in margin indicates the limit of ticket in lieu of which this check is issued, and this check must therefore be used to destination before midnight of such date. Stop-over may be allowed on this check if it bears a thirty-day limit (upon application to conductor).

"A. M. CLELAND, Gen'l Passenger Agent."

The punch-marks in the margin of the one delivered in lieu of plaintiff's ticket indicated the physical description of the plaintiff, the destination to which she was bound, the date at which her journey should end, and also that the ticket for which the check was issued was a second-class limited ticket. On the back, under the words "Signature of Passenger," is written the signature of Frank Sanden. It is admitted that he signed this also as the agent of plaintiff. On the way between St. Paul and Butte the plaintiff and her husband, desiring to stop off at the latter place, applied to the conductors on the different divisions to know whether they were entitled to stop-over privileges on the tickets purchased by them. They were informed that they were, but were referred to the conductor in charge on the run into Butte. As the train was approaching Butte, they inquired of this conductor as to their right to stop-over privileges. They were informed that they could stop over for one day and take the same train on the following day, but that they had best consult the ticket agent at Butte. This they did when the train arrived there, and were advised by him that, since their tickets allowed them one day longer than the schedule time between

St. Paul and Seattle, they could stop over for that one day. Thereupon both left the train and remained there during the day. On the next day, intending to resume their journey, they entered the train indicated by the conductor and agent. When their tickets were demanded, they presented the exchange checks. The conductor refused to accept them, though both informed him of what had been told them by the agent at Butte and the conductor in charge on the preceding day, and required them to ·pay full fares or leave the train. They declined to pay the required fares, and when the train reached Durant, a small station in the mountains about eighteen miles west of the city, they left it. This was between 9 and 10 o'clock in the evening. They remained there until 2 o'clock on the following morning, when they returned by train to Butte. It is not alleged, nor does it appear, that the conductor used any force or threats to induce them to leave the train. Nor does it appear that they were exposed for want of proper shelter.

The theory of the complaint is that the plaintiff had the right to rely upon the information given by the conductor and the agent at Butte, and that, notwithstanding she received no written permission from either to stop over, she was nevertheless entitled after being verbally informed by them that she could stop over to resume her journey and complete it to her destination. The pleadings are voluminous, but present only two issues, *viz.*: Whether the conductor or the agent, or both, gave plaintiff the information alleged, and the extent of the injury which she suffered. Upon the facts shown by the evidence, substantially as stated above, the trial court, being of the opinion that the plaintiff was not entitled to recover, directed a nonsuit, and judgment was entered for the defendant accordingly. The appeal is from the judgment and an order denying plaintiff's motion for a new trial.

The contentions made by counsel for plaintiff may be stated thus: (1) That by taking up the ticket purchased at St. Paul, and delivering in lieu thereof the exchange or identification check, the defendant substituted a new and different contract from that contained in the ticket, that under the recitals con-

tained in the check the question whether the plaintiff was entitled to stop-over privileges was left to the conductor to whom she applied to decide, and that, having decided as he did, she was entitled to act upon his decision; and (2) that, though the recitals in the check are not subject to the construction given them by the conductor, and she would otherwise have been bound by the terms contained in the ticket, yet she had a right to rely upon the information given her by the conductor. The argument is that in either case the conductor of the second train had no right to eject her, and hence that the defendant is liable for the wrong suffered by her at his hands.

The substitution of the check for the ticket in no wise changed the terms of the original contract. The check clearly indicated by its recitals and the punch-marks on the margin the class of passage to which the holder was entitled, and the limit within which the trip must have been completed. It clearly indicated the time limit of the ticket in lieu of which it was issued. It also contained the information that a stop-over could be allowed only in case the check which indicated the same limit bore upon its face a thirty-day limit. A casual reading of it, with an observation of the punch-mark cancellations, even if she had not read the ticket, would have informed the plaintiff that she was entitled to a continuous passage only within the limit designated. Since it was stipulated in the ticket that it would at any time be subject to exchange for the check, and since the check in no wise changed any of the conditions and stipulations in the ticket, its only office was to identify the plaintiff and the character of her contract. It was therefore not a substituted contract with different terms and conditions, but left the original ticket contract to control the rights of the parties. Nothing was left to the discretion of the conductor.

By the current of authority the rule is well settled that one who accepts a contract and proceeds to avail himself of its provisions is bound by the stipulations and conditions contained [1] in it; and the rule applies to contracts of carriage, both of passengers and property, provided only the conditions are reasonable, and not prohibited by law. (*Brian* v. *Oregon Short*

*Line R. R. Co.,* 40 Mont. 109, 105 Pac. 489, 25 L. R. A., n.'s., 459; *Boylan* v. *Hot Springs R. Co.,* 132 U. S. 146, 10 Sup. Ct. 50, 33 L. Ed. 290; *Mosher* v. *St. Louis I. M. etc. R. Co.,* 127 U. S. 390, 8 Sup. Ct. 1324, 32 L. Ed. 249; *Fonseca* v. *Cunard Steamship Co.,* 153 Mass. 553, 25 Am. St. Rep. 660, 27 N. E. 665, 12 L. R. A. 340; *Daniels* v. *Florida Central P. R. Co.,* 62 S. C. 1, 39 S. E. 762; *Gulf, C. & S. F. Ry. Co.* v. *Riney,* 41 Tex. Civ. App. 398, 92 S. W. 54; *Southern Ry. Co.* v. *White,* 108 Ga. 201, 33 S. E. 952; *Freeman* v. *Atchison, T. & S. F. Ry. Co.,* 71 Kan. 327, 80 Pac. 592; *Heffron* v. *Detroit City Ry.,* 92 Mich. 406, 31 Am. St. Rep. 601, 52 N. W. 802, 16 L. R. A. 345; *Hanlon* v. *Illinois C. R. R. Co.,* 109 Iowa, 136, 80 N. W. 223; *Hill* v. *Syracuse, Bing. & N. Y. R. Co.,* 73 N. Y. 351, 29 Am. Rep. 163; *Grace* v. *Adams,* 100 Mass. 505, 97 Am. Dec. 117, 1 Am. Rep. 131; *Harris* v. *Gr. West. Ry. Co.,* L. R. 1 Q. B. D. 515; *York Co.* v. *Illinois Central Ry. Co.,* 3 Wall. 107, 18 L. Ed. 170.) He is bound by the terms of the contract, whether he has read them or not. (*Boylan* v. *Hot Springs R. Co., supra; Watson* v. *L. & N. R. Co.,* 104 Tenn. 194, 56 S. W. 1024, 49 L. R. A. 454; *Daniels* v. *Florida Central P. R. Co., supra.*)

The ordinary card ticket for which full fare is paid is generally regarded as a mere token or check, the purpose of which is to indicate the route over which the passenger must travel. Upon a sale of it the law makes the contract. The purchaser is not expected to read the printed matter thereon to ascertain [2] whether there are any unusual stipulations, because he is not put upon his guard, nor has he had his attention directed to them, so that he may be presumed to have accepted conditions other than those which the law imposes. (*Fonseca* v. *Cunard Steamship Co., supra; Watson* v. *L. & N. R. Co., supra; Grand Trunk R. Co.* v. *Stevens,* 95 U. S. 655, 24 L. Ed. 535; *Quimby* v. *Vanderbilt,* 17 N. Y. 306, 72 Am. Dec. 469.) If, however, he has purchased a ticket at a reduced rate and the circumstances are such as to notify him of this fact, he is bound by the printed conditions upon it, whether he reads them or not or whether he is capable of reading them. (*Watson* v. *L. & N. R. Co., supra.*)

In this case the plaintiff not only expressly agreed to the limitations embodied in the ticket, but did so in consideration of the reduced rate at which she obtained it, and hence must be presumed to have understood them. Her right to recover, then, depends upon whether the conductor and agent, or either, at Butte, had authority to waive any stipulation in the contract so as to permit her to stop over. If this is so, the defendant was bound by their action; the plaintiff and her husband had the right to resume their journey at the end of the time limit fixed by them; the conductor of the train which they entered for this purpose committed an actionable wrong in ejecting them from it; otherwise, they were trespassers, and he was authorized to eject them. (Rev. Codes, sec. 5350; *Mosher* v. *St. Louis, I. M. & S. Ry. Co., supra,* and cases cited.)

Now, what right had the plaintiff to accept and act upon [3] the statements of either the conductor or agent? By the terms of the contract she was bound to know that she was to make a continuous trip under the penalty of forfeiting her ticket and being compelled to pay full fare, and hence that she was not entitled to a stop-over. By the statement contained in the check, which plainly indicated what her rights were, she was notified that upon that kind of a ticket the conductor was not authorized to grant a stop-over. Hence she is not in a position to claim either that she was misled by the statement of the conductor or that he had authority to waive the stipulation with reference to the stop-over. Upon the face of it was expressed the condition under which he, and he only, could grant the privilege. She was also bound to understand that the agent had no authority to bind the defendant by his action. He had not sold the ticket, and therefore was not acting within the apparent scope of his authority. The plaintiff was properly nonsuited.

The case of *Tarbell* v. *Northern Central Ry. Co.,* 24 Hun (N. Y.), 51, is not in point. In that case the plaintiff was entitled to a stop-over upon the ticket purchased by him. The regulations of the defendant required the holder of a ticket who desired to stop over at an intermediate station to apply to the

conductor for a stop-over ticket. The plaintiff upon application to the conductor was told that he could stop over at such a station and take the next train. He did not obtain a stopover ticket, but left the train relying upon the statement of the conductor. It was properly held that he had the right to complete his journey on the next train, from which he was ejected, because he was entitled to rely upon the statement of the conductor. The conductor had a general authority to grant stop-over privileges. So far as the plaintiff was concerned, it was not of moment how the conductor executed this authority.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.

